# RECORD NO. 16-2370

### In The
# United States Court of Appeals
### For The Fourth Circuit

**GREGORY RANDOLPH, on his own behalf and on behalf of all others similarly situated; DANA BROWN; TWANDA BANISTER; GREGORY EUBANKS; ARTHUR HINNANT; EZRA CHARLES CALLOWAY; RHASAAN DARK; RODNEY WILLIAMS; KENNETH JACKSON; GEORGE MILES; JAMAL DREW; KENNETH SEARLES; DEXTER ANDERSON; BERNARD BROWN; NATESHIA DECHE BEASLEY; EUNICE MELTON; ROBIN MELTON; EARNEST LEE ALLEN, JR.; SHANINA WASHINGTON; MELVIN L. WEBB-BEY; SYLVIOUS WILLIAMS; FASIL ALEMAYEHU; AMISHA BENNETT; EDWARD ROBINSON; DANIELLE SMITH; RONALD WALL; ROY BENNETT; MELQUIN GAINO; LESLIE GROSS; ANTONIO WALL; LAMONT NEWTON; ANTHONY WILLS; LAMARR YOUNG; MICHELLE BENNETT; RODNEY BROOKS; LARRY JEFFERSON; LENARD PRINGLE; JUSTIN FOSTER; EDDIE PERKINS; SEAN E. PITTMAN; JIMMIE MISSOURI; KEVIN SORRELL; TERENCE BROWN; TERRANCE DOVE; ERIC SHEFFEY; TERRELL TWITTY; JEFF JORDAN; SAMUEL HEGWOOD; JOHNNY BOYKIN; BERNARD BENNETT; LAVELLE GANT; DONALD RAY JONES; CORNELIUS REDFEARN; DARNELL MADDOX; RONALD YOUNG; CALVIN GORHAM,**

*Plaintiffs – Appellees*,

v.

**POWERCOMM CONSTRUCTION, INC.; DAVID KWASNIK, SR.,**

*Defendants – Appellants*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT GREENBELT**

———————————

## BRIEF OF APPELLANTS

———————————

Geoffrey M. Bohn
Robert A. Battey
BOHN & BATTEY, PLC
Post Office Box 101685
Arlington, Virginia  22210
(703) 599-7076

*Counsel for Appellants*

THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

_____

Appeal No. 16-2370
_____

**GREGORY RANDOLPH,** Appellees,

v.

**POWERCOMM CONSTRUCTION, INC.,** *et al.,* Appellants.

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS REQUIRED BY RULE 26.1 OF THE FEDERAL RULES OF APPELLATE PROCEDURE</u>

The Appellants PowerComm Construction, Inc. and David Kwasnik, Sr. (collectively "PowerComm") certify the following:

1.      Appellant PowerComm is not a publicly held corporation or other publicly held entity;

2.      Appellant PowerComm does not have a parent corporation;

3.      10% or more of the stock of Appellant PowerComm is not owned by a publicly held corporation or other publicly held entity, and there is no other publicly held corporation or other publicly held entity associated with appellants that has a direct financial interest in the outcome of the litigation;

4.      Appellant PowerComm is not a trade association; and this case did not arise out of a bankruptcy proceeding.

# **TABLE OF CONTENTS**

**Page**

DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER
INTERESTS REQUIRED BY RULE 26.1 OF THE FEDERAL RULES OF
APPELLATE PROCEDURE ....................................................................i

TABLE OF CONTENTS..........................................................................ii

TABLE OF AUTHORITIES ....................................................................iv

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES .......................................................................1

STATEMENT OF CASE ...........................................................................2

STATEMENT OF FACTS .........................................................................3

SUMMARY OF ARGUMENT ..................................................................4

      I.     In evaluating the FLSA fee petition, the motions court abused
its discretion erred in failing to reduce attorneys' fees based on
the results obtained versus the amounts sought ...................................4

      II.    In evaluating the  FLSA fee petition, the motions court abused
its discretion in failing to impose any reduction in attorneys'
fees despite the significant number of unsuccessful plaintiffs..............5

APPLICABLE STANDARD OF REVIEW.................................................6

ARGUMENT ............................................................................................7

      I.     In evaluating the FLSA fee petition, the motions court abused
its discretion in failing to reduce attorneys' fees based on the
results obtained versus the amounts sought ........................................7

               Legal Standard and Precedent ............................................................7

Argument ........................................................................................11

II.    In evaluating the FLSA fee petition, the motions court abused
       its discretion in failing to impose any reduction in attorneys'
       fees despite the significant number of unsuccessful plaintiffs ............19

       Legal Standard and Precedent ...........................................................19

       Argument ........................................................................................23

CONCLUSION ....................................................................................27

REQUEST FOR ORAL ARGUMENT ...................................................27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*Adorno v. Port Authority of New York and New Jersey*,
     685 F. Supp. 2d 507 (S.D.N.Y. 2010) ..........................................................21

*Alford v. Martin & Gass*, *Inc.*,
     No. I :08cv595 (LMBITRJ), 2009 WL 2447936
     (E.D. Va. Aug. 3, 2009)..................................................................14, 15

*Almendarez v. J.T.T. Enterprises Corp.*,
     Civil No. JKS 06-08, 2010 WL 3885362
     (D. Md. Aug. 25, 2010) ..................................................................11

*Andrade v. Aerotek, Inc.*,
     852 F. Supp. 2d 637 (D. Md. 2012).................................................24, 25, 26

*Barber v. Kimbrell's Inc.*,
     577 F.2d 216 (4th Cir. 1978) ...................................................................8, 10

*Blanchard v. Bergeron*,
     489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989) ..................................10

*Brodziak v. Runyon*,
     145 F.3d 194 (4th Cir. 1998) ...................................................................24, 25

*Carlson v. Leprino Foods Co.*,
     No. 1:05-CV0798, 2009 WL 5697878
     (W.D. Mich., Sept. 20, 2009),
     *Report and Recommendation Adopted in Part, Rejected in Part*,
     2010 WL 299490 (W.D. Mich., Jan. 20, 2010)...........................................22

*Chapman v. Ourisman Chevrolet Co., Inc.*,
     Civil Action No. AW-08-2545, 2011 WL 2651867
     (D. Md. July 1, 2011)..................................................................11, 14, 24, 25

*City of Riverside v. Rivera*,
    477 U.S. 561 (1986)....................................................................14

*Cooper v. Dyke*,
    814 F.2d 941 (4th Cir. 1987) ........................................................6

*Daly v. Hill*,
    790 F.2d 1071 (4th Cir. 1986) ......................................................6

*Doe v. Kidd*,
    656 F. App'x 643 (4th Cir. 2016) ................................................10

*Duke v. Uniroyal Inc.*,
    928 F.2d 1413 (4th Cir. 1991) ............................................20, 26

*Farrar v. Hobby*,
    506 U.S. 103, 113 S. Ct. 566 (1992) .........................................7, 8

*Foster v. Board of School Comm'rs*,
    810 F.2d 1021 (11th Cir.), *cert. denied*,
    484 U.S. 829 (1987)................................................................ 19-20

*Grissom v. The Mills Corp.*,
    549 F.3d 313 (4th Cir. 2008) ......................................9, 20, 24, 26

*Hensley v. Eckerhart*,
    461 U.S. 424, 103 S. Ct. 1933 (1983) ...................................*passim*

*Jackson v. Estelle's Place, LLC*,
    391 F. App'x. 239, 2010 WL 3190697 (4th Cir. 2010), *cert. denied*,
    562 U.S. 1219 (2011)..............................................................*passim*

*Johnson v. City of Aiken*,
    278 F.3d 333 (4th Cir. 2002) ...................................................9, 20

*Johnson v. Georgia Highway Express Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...........................................7, 8, 10

*McAfee v. Boczar*,
    738 F.3d 81 (4th Cir. 2013) ....................................................8, 19

*Mercer v. Duke Univ.*,
    401 F.3d 199 (4th Cir. 2005) .......................................................8, 11, 15, 19

*Nigh v. Koons Buick Pontiac GMC, Inc.*,
    478 F.3d 183 (4th Cir. 2007) .................................................................8, 15

*Norris v. Hartmarx Specialty Stores, Inc.*,
    913 F.2d 253 (5th Cir. 1990) ........................................................................21

*Ramirez v. Lewis Energy Group, L.P.*,
    No. 5:15-CV-34, 2016 WL 4004706
    (S.D. Tex., July 29, 2016)...............................................................................21

*Robinson v. Equifax Info. Servs., LLC*,
    560 F.3d 235 (4th Cir. 2009) ..........................................................................7

*Rum Creek Coal Sales, Inc., v. Caperton*,
    31 F.3d 169 (4th Cir. 1994) .............................................................................6

*Saizan v. Delta Concrete Products Co., Inc.*,
    448 F.3d 795 (5th Cir. 2006) ........................................................................10

*Spegon v. Catholic Bishop of Chicago*,
    175 F.3d 544 (7th Cir. 1999) .......................................................................10

*Toliver v. JBS Plainwell, Inc.*,
    Case No. 1:11-cv-302, 2015 WL 11255451
    (W.D. Mich. Aug. 20, 2015),
    *Report and Recommendation Adopted as Modified*,
    *Toliver v. JBS Plainwell, Inc.*,
    2016 WL 165031 (W.D. Mich., Jan., 14, 2016).......................................22, 23

*Wooldridge v. Marlene Industries Corp.*,
    898 F.2d 1169 (6th Cir. 1990),
    *abrogated on other grounds by*
    *Buckhannon Bd. & Care Home, Inc. v.*
    *W. Va. Dep't of Health & Human Resources*,
    532 U.S. 598 (2001)........................................................................................21

## **<u>STATUTES</u>**

28 U.S.C. § 1291 ..................................................................................1

29 U.S.C. §§ 207, *et seq.* ....................................................................1

## **<u>RULE</u>**

Fed. R. App. P. 4 .................................................................................1

Fed. R. Civ. P. 23 ..............................................................................12

Fed. R. Civ. P. 26(a)(1) .....................................................................12

## JURISDICTIONAL STATEMENT

The basis for the district court's subject matter jurisdiction was the Fair Labor Standards Act "FLSA", 29 U.S.C. §§ 207, *et seq.* Plaintiff Gregory Randolph ("Randolph") alleged that defendants PowerComm and David L. Kwasnik Sr. (collectively "PowerComm") paid him improperly under the FLSA. The basis for this Court's appellate jurisdiction is 28 U.S.C. § 1291. The subject appeal is timely, as the Notice of Appeal was filed on November 30, 2016, within thirty (30) days of the district court's October 31, 2016 Order and related Memorandum on Plaintiffs' Motion for Attorneys' Fees and Costs, and within thirty (30) days of the district Court's November 22, 2016 Order on Plaintiffs' Revised Petition for Award of Attorneys' Fees and Costs. *See Fed. R. App. 4.*

## STATEMENT OF ISSUES

I.    Whether, in evaluating the FLSA fee petition, the motions court abused its discretion in failing to reduce attorneys' fees based on the results obtained versus the amounts sought.

II.    Whether, in evaluating the FLSA fee petition, the motions court abused its discretion in failing to impose any reduction in attorneys' fees despite the significant number of unsuccessful plaintiffs.

## **STATEMENT OF CASE**

This appeal concerns a disputed award of attorneys' fees by the motions court following a settlement before trial. The underlying action was an FLSA (and related state-law claims) complaint filed by Randolph in the U.S. District Court for the District of Maryland alleging improper payment of overtime wages. A total of 65 plaintiffs joined the suit (63 of them opt-in plaintiffs). The plaintiffs' initial demand was for $1,745,875.65. This demand was exclusive of attorneys' fees and costs. Subsequently, 10 of the 65 plaintiffs were dismissed pursuant to PowerComm's motion for summary judgment, which noted that their claims were outside the applicable statute of limitations. Shortly before trial, the parties settled the lawsuit for a total of $100,000.00, again exclusive of attorneys' fees and costs. At the subsequent fairness hearing, several plaintiffs appeared and testified as to their dissatisfaction with the outcome. Notwithstanding, the district court approved the settlement. In evaluating the subsequent petition for attorneys' fees, the district court did not impose any reduction based on the results obtained versus the amounts sought, despite its obligation to do so under the law. Additionally, the district court also failed to reduce attorneys' fees based on the unsuccessful claims of the unsuccessful plaintiffs, again contrary to Supreme Court and Fourth Circuit holdings.

## STATEMENT OF FACTS

This action commenced on June 12, 2013, with a complaint filed by Randolph, alleging a variety of federal and state law claims against PowerComm; the gravamen being that defendant (Randolph's former employer) had failed to pay proper overtime as required by the FLSA. (JA 36-50). Randolph and his counsel solicited and joined sixty-four (64) additional plaintiffs, and the district court subsequently certified the case as a class action. The assembled plaintiffs alleged initial total damages of $1,745,875.65 ($581,958.55 in unpaid overtime, and liquidated damages in the amount of $1,163,917.10). (JA 52). They also sought pre- and post-judgment interest, as well as attorneys' fees and costs. (JA 46).

The district court later dismissed ten (10) plaintiffs on PowerComm's motion for summary judgment. (JA 96). Shortly before trial, the remaining parties entered into a written Settlement Agreement and Release ("Settlement") (JA 108-11). The Settlement provided for a sum total payout of $100,000.00 in damages, but neither pre- nor post-judgment interest, nor any other relief. (JA 108-11). The Settlement provided that attorneys' fees would be determined later by the district court upon a properly-supported Petition. (JA 108).

The district court then held a fairness hearing on February 18, 2016 as to the Settlement; numerous plaintiffs attended and five (5) of them, including Randolph, testified in opposition to the terms of the Settlement. (JA 400-466). After taking

the matter under consideration, the court approved the Settlement as written.  (JA 116).

Plaintiffs' counsel then filed his Petition for fees.  (JA 126).  PowerComm opposed the Petition on a variety of grounds (JA 264-289), and in its Order and related Memorandum dated October 31, 2016, the court ordered certain reductions and recalculations to the claimed fees.  (JA 324-340).  However, the court specifically declined to impose any reduction in fees for results obtained versus amounts sought.  (JA 336-37).  The court also declined to impose any reduction in fees due to the significant number of unsuccessful plaintiffs (JA 336-37) (for whom work was specified in billings submitted by plaintiffs' counsel).  *See Brief of Appellants* at 24, n. 18, *infra.*

Plaintiffs' counsel submitted revised billings based on the court's Memorandum.  (JA 324).  The court approved the revised billings and, by Order dated November 21, 2016, awarded $183,764.00 in attorneys' fees.  (JA 397).

## SUMMARY OF ARGUMENT

**I.    In evaluating the FLSA fee petition, the motions court abused its discretion erred in failing to reduce attorneys' fees based on the results obtained versus the amounts sought.**

Although there are numerous factors a court must weigh in ruling on the reasonableness of a Petition for attorneys' fees, the U.S. Supreme Court has held that a consideration of the amount recovered by plaintiffs against the amount

4

sought is '*the most critical factor*' in assessing the reasonableness of such a

Petition. Other factors pertain, but if a court does not perform this analysis and

modify an award accordingly, it has manifestly abused its discretion. Here,

plaintiffs recovered less than six percent of what they sought (with many venting

their unhappiness about the outcome in open court), yet the court declined to

impose any reduction whatsoever in claimed attorneys' fees on those grounds.

Such a lapse flies in the face of case-law in this Circuit and in the District. The

district court's stated rationale for the lapse was legally and factually flawed, and

offered an incoherent policy argument as well.

## II.     In evaluating the  FLSA fee petition, the motions court abused its discretion in failing to impose any reduction in attorneys' fees despite the significant number of unsuccessful plaintiffs.

The district court is also required to make a separate reduction in claimed

attorneys' fees for claims and/or plaintiffs that achieved no success at all. Here,

ten of 65 plaintiffs walked away with nothing, having been dismissed on summary

judgment. Again, case-law is rife with examples of courts reducing fees in this

situation, and the district court here abused its discretion in declining to do so. The

court dismissed applicable precedent by finding a distinction between unsuccessful

claims and unsuccessful parties, for which there is no support in the law. And

case-law rebukes the court's other rationale – that given commonality and

intertwining of the work performed when there are a large number of plaintiffs, it

is impossible to tease out fees for unsuccessful claims. Here, plaintiffs' counsel submitted discrete billings for the unsuccessful plaintiffs, and thus the analysis should be a simple one. And even were that not the case, precedent provides the simple expedient of a proportional percentage reduction in fees based on the number of unsuccessful plaintiffs. Other courts have done this, and the district court here offered no explanation at all as to why it would not. Again, this lapse was an abuse of discretion and a flouting of Circuit and District court precedent.

## **APPLICABLE STANDARD OF REVIEW**

This Court reviews a district court's award of attorneys' fees for abuse of discretion. *Jackson v. Estelle's Place, LLC*, 391 Fed. Appx. 239, 242 (4th Cir. 2010). The Court has also stated that:

> While our review of a district court's decision in awarding fees is for an abuse of discretion, *see Hensley* [*v. Eckerhart*], 461 U.S. [424,] 437, 103 S.Ct. [1933,] 1941 [1983], the deferential review ordinarily inherent in that standard is modified by a closer review when the appropriate criteria that are established for a fee award are in question. *See Cooper v. Dyke*, 814 F.2d 941, 950 (4th Cir. 1987) (abuse of discretion review appropriate if district court follows proper standards); *Daly v. Hill*, 790 F.2d 1071, 1085 (4th Cir. 1986) (abuse of discretion not applicable where district court applies incorrect criteria).

*Rum Creek Coal Sales, Inc., v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994).

## ARGUMENT

**I.    In evaluating the FLSA fee petition, the motions court abused its discretion in failing to reduce attorneys' fees based on the results obtained versus the amounts sought.**

The conclusion and reasoning of the court below as to plaintiffs' counsel's fee petition were an abuse of discretion, compared the wrong numbers, were squarely contrary to the law in this Circuit and its own precedent, and applied incorrect criteria in evaluating the limited degree of success compared to the relief sought.

### Legal Standard and Precedent

According to the Supreme Court, "'*the most critical factor*' in determining the reasonableness of [an attorney] fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)) (emphasis added).  What the motions court must ask is whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."  *Hensley*, 461 U.S. at 434.

This Court fleshed this principle out as follows:

> The proper calculation of an attorney's fee award involves a three-step process. First, the court must "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).  *Id.* at 243–44.  Next, the court must "subtract fees for hours spent on unsuccessful claims

unrelated to successful ones." *Id.* at 244.  Finally, the court
should award "some percentage of the remaining amount, depending on the
degree of success enjoyed by the plaintiff."

*McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)  As to this important final step:

> [A] district court must "consider the relationship between the extent of
> success and the amount of the fee award." The court will reduce the award *if
> "the relief, however significant, is limited in comparison to the scope of the
> litigation as a whole*." *Hensley,* 461 U.S. at 439–40.
> We have recognized that, "[w]hen considering the extent of the relief
> obtained*, we must compare the amount of damages sought to the
> amount awarded*." *Mercer v. Duke Univ.,* 401 F.3d 199, 204 (4th Cir. 2005).
> If a [ ] plaintiff achieves only part of the success she sought, the lodestar
> amount may be excessive. *See Farrar, supra,* 506 U.S. [at] 114.

*McAfee*, 738 F.3d at 92-93 (emphases added).   This Court has also stated that:

> We do consider the extent of the relief obtained by the plaintiff to be
> particularly important when calculating reasonable fees, *see Mercer [,
> supra],* 401 F.3d [at] 204…,  and *Barber* [*v. Kimbrell's Inc.,*] 577 F.2d
> [216,] 226 n. 28 [(4th Cir. 1978)] *requires district courts to weigh the
> amount in controversy and the results obtained before deciding upon a
> reasonable fee* [citation omitted].  Looking to the extent of relief permits
> courts quickly to assess the merits of a plaintiff's claims. *See Farrar,* 506
> U.S. at 115.  The *Barber* requirement rests on the idea that a prevailing
> plaintiff is less worthy of a fee award when one or more of his claims lack
> merit—that is, when he cannot demonstrate that he deserves the
> compensation he demanded ….

*Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007)

(emphasis added).  Applying this standard, in *McAfee*, due to the limited success,

the Court reduced the fees by approximately two-thirds.  *McAfee*, 738 F.3d at 95.

In analyzing fees awarded in an FLSA action, consistent with *McAfee*, this

Court affirmed a 25-percent reduction of attorneys' fees given the modest result

(compared to claimed damages) achieved by settlement. *Jackson v. Estelle's Place, LLC*, 391 F. App'x. 239, 2010 WL 3190697 (4th Cir. 2010), *cert. denied*, 562 U.S. 1219 (2011).[1] There, the district court noted that of the 13 forms of relief sought in the complaint, nine were not addressed in the Settlement Agreement. *See id.* at 241. After determining the lodestar amount, the district court then reduced the fees given the "modest value" of the successful claims. *See id.*

On appeal, the *Jackson* appellants challenged the determination that a reasonable fee was the traditional lodestar amount less approximately 25-percent, contending that they enjoyed "complete success on all claims," and under *Grissom*, *supra*, their "degree of success" was effectively one hundred percent. *See id.* at 242. In support, the appellants cited the district court's statement that "plaintiffs settled all of their claims for full value." *Id.* However, this Court held that the

---

[1]      As to calculating fees in an FLSA action, this Court stated, quoting *Grissom v. The Mills Corp.*, 549 F.3d 313 (4th Cir. 2008), that:

> … after calculating the lodestar figure, the "court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Johnson v. City of Aiken,* 278 F.3d 333, 337 (4th Cir. 2002). "Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, *it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.*" *Id.*

*Jackson*, 391 F. App'x at 241 (emphasis in original) (citation omitted).

9

district court properly assessed the 12 lodestar factors[2] and then arrived at its

"final" lodestar fee after considering the lodestar factor relating to the amount in

controversy and the results obtained. *See id.* at 243. This Court further noted that

the district court was cognizant of the broad scope of the case as it was filed and

the request for broad relief, compared to the more modest result obtained. *See id.*[3]

Thus, the 25-percent reduction to attorneys' fees for limited success was affirmed.

This degree-of-success analysis has been routinely applied by other Circuits

to reduce FLSA fee awards.[4] And multiple decisions from the District Court of

Maryland similarly reduced FLSA fee awards 25-percent based on limited success

compared to the amounts sought. As that court explained:

---

[2]    *See Jackson*, 391 F. App'x. at 243, citing *See Barber*, *supra*, 577 F.2d at 226 n. 28 (adopting factors set forth in *Johnson*, *supra*, 488 F.2d 714, *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

[3]    As this Court recently articulated, a court should "reduce the award if 'the relief, however significant, is limited in comparison to the scope of the litigation as a whole.' ... What the court must ask is whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.' " *Doe v. Kidd*, 656 F. App'x. 643, 657(4th Cir. 2016) (quoting *Hensley*, *supra*,  461 U.S. at  434, 436.

[4]    *See*, *e.g.*, *Saizan v. Delta Concrete Products Co., Inc.* 448 F.3d 795 (5th Cir. 2006) (where the court affirmed the reduction of attorneys' fees by $100,000 to $13,000; "[d]ue to Plaintiffs' lack of success on the merits, the District Court reduced the award of attorneys' fees in proportion to the difference between the initial prayer and settlement amount." *Id.* at 801); and, *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 557-59 (7th Cir. 1999) (where the court affirmed reduction of fees by 50-percent because the plaintiff obtained a judgment in an amount far less than originally sought).

When considering the extent of the relief obtained, the District Court for the District of Maryland and the Fourth Circuit imposed a twenty-five percent deduction for FLSA cases where the court considered the successful claims to the requested attorneys' fees and "compare[d] the amount of the damages sought to the amount awarded." *Jackson v. Estelle's Place LLC,* 391 F. App'x 239, 245 (4th Cir. 2010) (quoting *Mercer v. Duke Univ.* (citations omitted)….

*Chapman v. Ourisman Chevrolet Co., Inc.*, Civil Action No. AW-08-2545, 2011 WL 2651867, at*17 (D. Md. July 1, 2011).  In that case, the court noted that the two plaintiffs recovered less than 50-percent and 15-percent, respectively, of damages sought.  *See id.*  Regarding the nominal recovery compared to the amounts sought, the court followed "similar cases and further impose[d] a downward adjustment of twenty-five percent" as to the allowable attorneys' fees.  *Id.*, at *18.

In *Almendarez v. J.T.T. Enterprises Corp.*, Civil No. JKS 06-08, 2010 WL 3885362, at *7 (D. Md. Aug. 25, 2010), the Maryland court also reduced the "traditional lodestar" amount by 25-percent, because the "the court must consider the fact that the amount of unpaid overtime awarded to the three prevailing Plaintiffs is only a small fraction of what they sought…."

### **Argument**

Thus, Circuit and District law is clear and routinely applied.  However, the motions court chose not to follow it, for unsupportable reasons.  Here, as in

11

*Jackson*, *supra*, Randolph's Complaint sought several claims for relief.[5]  On July

28, 2014, plaintiffs asserted their initial claim for monetary damages in their

Amended Rule 26(a)(1) Disclosures ("Disclosures").  (JA 51-56).  In those

Disclosures, plaintiffs demanded that:

> **Accordingly, Plaintiffs estimate at this time that they are owed roughly $581,958.55 in unpaid overtime, and Plaintiffs further assert that they are entitled to liquidated damages in the amount of roughly $1,163,917.10 <u>for a sum total of roughly $1,745,875.65.</u>**

(JA 52) (emphasis added).  This initial monetary demand of nearly $2 million was

exclusive of attorneys' fees.

Shortly before trial, pursuant to a written Settlement Agreement and Release

("Settlement"), the parties settled the litigation for a small fraction of the damages

and other relief sought.  (JA 108-111).  Pursuant to the Settlement, PowerComm

would pay a total of $100,000.00, exclusive of attorneys' fees (JA 108) and no

---

[5]      Specifically, the Complaint sought to: (A) Certify this case as class action pursuant to Federal Rule of Civil Procedure 23; (B) Appoint plaintiff and his counsel of record to represent the class; (C) Declare that defendants violated the involved statutes; (D) Award judgment in the amount of the difference of the wages paid and the wages owed; (E) Award judgment for plaintiff's economic loss; (F) Award pre-judgment interest; (G) Award interest due on unpaid wages; (H) Award attorneys fees and costs; and, (I) award any other relief deemed just and proper. *See* (JA 46).

other substantive relief (JA 110).[6]  Plaintiffs' counsel then filed a Motion to

Schedule a Fairness Hearing.  (JA 100-106).

On February 18, 2016, after notice to all plaintiffs remaining in the case, the

court held a fairness hearing regarding whether the Settlement should be approved.

At the hearing, five (5) plaintiffs (almost 10-percent of the remaining plaintiffs),

including the lead plaintiff,  Randolph,[7] objected to the settlement amount.

Specifically, plaintiff Leonard Pringle objected that he did not receive what

was represented (JA 421-22, 22:24-23:7), and that he felt like he was owed a lot

more money than what was given (JA 423, 24:4-24:6).  Plaintiff Leslie Gross

described the settlement as "a fraud" (JA 427, 28:24-29:6), and stated the numbers

"really don't make sense" (JA 427, 28:7-28:17).  Plaintiff Dana Brown testified

that she received less in the settlement than another plaintiff despite having worked

for PowerComm "way longer."  (JA 436 37:15-38:3). Lead plaintiff Gregory

Randolph objected in part because plaintiffs' counsel told him this was "one of the

biggest cases he ever had in his firm", and that plaintiff's counsel was asking his

---

[6]    Pursuant to the Settlement, and contrary to the broad relief sought in the
Complaint, there was no admission of wrongdoing by PowerComm; there was no
declaration that PowerComm violated any statutes; PowerComm paid no
compensation for economic loss; PowerComm paid no compensation for pre-
judgment interest; and PowerComm paid no compensation for interest due on
unpaid wages. *Compare* (JA 46 and JA 108-111).

[7]    At the February 18, 2016 fairness hearing, plaintiffs Randolph, Dana Brown,
Lenard Pringle, Leslie Gross and Eunise Melton objected to the settlement under
oath.  (JA 400 – 466).

mother and sister if he would accept "way less than what [he] was supposed to get." (JA 440-41, 41:9-42:2). In short, he testified that he "was told one thing, and now it's something totally different, like [*sic*]." (JA 441-42, 42:24-43:5). Finally, plaintiff Eunise Melton complained that his employment rate was wrong; that he was making $25 per hour when he left, but was only compensated at $8.40 in the settlement. (JA 444, 45:18-45:25). Notwithstanding these objections under oath, and after hearing arguments from counsel as to the settlement, the motions court took the matter under advisement, and subsequently approved the settlement on April 28, 2016. (JA 116).

Despite this evidence, and despite the clear guidance from this Court and the regular practice in its District, the motions court imposed no reduction in fees whatsoever related to the limited degree of success. The court justified this decision, *inter alia*, with a clearly erroneous calculation: "[T]he overall recovery … represents thirty-eight percent of their claimed damages that fall within the statute of limitations." ECF No. 166 at 7. (JA 336).[8] The cited page

---

[8]     The motions court opined that "[c]ourts appear to have taken different approaches on quantifying success," contrasting *Alford v. Martin* & *Gass, Inc.*, No. I :08cv595 (LMBITRJ), 2009 WL 2447936, at *3 (E.D. Va. Aug. 3, 2009), and *Chapman v. Ourisman Chevrolet Co., Inc.*, Civil Action No. AW-08-2545, 2011 WL 2651867, at*18 (D. Md. July 1, 2011). (JA 337). However, *Alford* is factually inapposite as there plaintiffs obtained a jury verdict in an amount almost equal to the plaintiffs' settlement offer that was rejected by the defendants. Quoting *City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11 (1986) (the defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the

from ECF 166 provides no evidentiary support whatsoever for this percentage. (JA

123). Moreover, nowhere in the case law is there an instance of any court

discounting an amount sought or claimed damages due to a statute-of-limitations or

similar legal infirmity. The motions court then offered this reasoning:

> In making its determination, the Court notes that while "the degree of success obtained by the plaintiff is the most critical factor in determining the reasonableness of a fee award," *Hensley,* 461 U.S. at 436-37, the Court does "not reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall." *Id.* at *17 (quoting *Nigh v. Koons Buick Pontiac GMC, Inc.,* 478 F.3d 183, 190 (4th Cir. 2007)). Further, the Court does not wish to disincentivize plaintiffs' counsel from reaching reasonable settlements by reducing their attorney's fees awards in cases of more moderate amounts. While Plaintiffs here did not ultimately recover the damages sought at the beginning of litigation, *their final award was successful*. Accordingly, the Court will not reduce attorney's fees here on the basis of results obtained.

(JA 337) (emphasis added).

Again, this reasoning and conclusion were an abuse of discretion, clearly

wrong, and applied incorrect criteria in evaluating the limited degree of success

compared to the relief sought. The correct standard is that "[w]hen considering the

extent of the relief obtained, we must compare the amount of *damages sought* to

the amount awarded." *Mercer*, *supra*, 401 F.3d at 204 (emphasis added). The

---

plaintiff in response"), the Virginia court noted that approximately 61-percent of the fees were incurred after the plaintiff's settlement offer. *Alford*, 2009 WL 2447936, at *3. These facts are easily distinguishable from the present facts, where PowerComm was forced to litigate for nearly two (2) more years after plaintiffs made their $1,745,875.65 damages claim. Thus, the motions court's survey did not support its reasoning.

motions court did not do this. Instead of evaluating the degree of success by comparing the **$1,745,875.65** in damages initially sought to the amount ultimately obtained ($100,000), the court arbitrarily, and with no legal precedent, calculated only from the plaintiffs' damages that fell within the statute of limitations (which had been vigorously litigated by both sides). Had the motions court applied the correct standard, it would have concluded that plaintiffs recovered 5.7-percent of damages sought (5.7% = $100,000 divided by $1,745,875.65).[9]

This was the most glaring error, resulting in the greatest harm to appellants. But even assuming *arguendo* that the motions court had applied the correct standard, the finding that plaintiffs recovered 38-percent of their claimed damages falling within the statute of limitations is clearly wrong and unsupported by the evidence. In Randolph's Motion to Schedule a Fairness Hearing, an attachment was provided that plaintiffs' alleged claims were discounted to 38.5 percent. (JA 112-13).[10] However, the motions court never made any finding that the claims submitted by plaintiffs were in fact their actual damages (within the statute of

---

[9]     Depicting the limited success, compare the individual claims initially sought (JA 51-56) to the relief obtained by settlement for the individual successful claims (JA 108).

[10]     Randolph subsequently submitted Updated Calculations, where alleged claims were discounted to 38-percent. *See Docket Report, Document No. 161* (JA 32). These Updated Calculations made modest adjustments to individual plaintiffs, discounting recoveries from 38.5-percent to 38-percent, but the total settlement amount remained at $100,000.

limitations). Instead, the motions court simply applied the calculations of Randolph's counsel in allocating to plaintiffs the $100,000 settlement agreed to by the parties. These calculations rested on mere assertion and nothing more. *See* (JA 112-13). Against this, several plaintiffs came and testified under oath at the fairness hearing that they were entitled to receive a lot more than what was recovered. *See supra.* Further, PowerComm produced in discovery more than 10,000 pages of plaintiffs' timesheets *signed by the plaintiffs* which clearly showed that the 38% recovery within the statute of limitations was erroneous. (JA 76, "PowerComm ultimately produced thousands of records over the course of discovery…").[11]

And even assuming *arguendo* that the overall recovery represented 38-percent of the claimed damages that fell within the statute of limitations (or 38-percent of the amount of damages sought), on this basis alone it was an abuse of discretion not to reduce the fees in this action. As shown *supra*, courts routinely reduce fees even when the recovery is larger than that here.

In closing, no one expected the motions court to "reflexively" reduce the fee award. The parties are, however, entitled to a judgment derived from a proper consideration of correct facts and a proper application of Fourth Circuit law and

---

[11]    In weighing the evidence as to hours worked, the motions court even stated that the plaintiffs' signed time sheets compared to their verified interrogatory answers *created a "genuine dispute"* as to whether the statute of limitations had run as to certain opt-in plaintiffs. (JA 76).

District Court precedent, which did not happen here. None of the motions court's cited cases which upheld fee awards are remotely comparable to the instant case, and the factual and legal errors clearly establish an abuse of discretion. Moreover, the policy argument advanced by the motions court is nonsensical. The court stated that it "[did] not wish to disincentivize plaintiffs' counsel from reaching reasonable settlements by reducing their attorney's fees awards in cases of more moderate amounts." (JA 337). The settlement and the instant fee dispute were completely separate, legally and temporally. Plaintiffs and their counsel had no way of determining what the fee award would be when they entered into the Settlement, and thus "incentive" had nothing to do with it. And this Court should be troubled by the District Court's clear implication -- that applying long-established law in this Circuit results in unfavorable public policy.

Here, not only was the scope of relief obtained significantly less than what was sought, but the plaintiffs *recovered only 5.7-percent of their claimed damages*. It is a manifest injustice, to say nothing of an abuse of discretion, for any motions court in this Circuit to rule as this one did under these facts. Allowing the motions court's decision to stand on this issue, given the incorrect factual findings and legal

analysis, would serve to contravene the law of this Circuit and of the Supreme

Court.[12]

## II. In evaluating the FLSA fee petition, the motions court abused its discretion in failing to impose any reduction in attorneys' fees despite the significant number of unsuccessful plaintiffs.[13]

A motions court is required to perform a separate analysis, and reduction

when appropriate, of attorneys' fees sought when, as here, there were a significant

number plaintiffs who achieved no success at all in the litigation.  The motions

court here failed to do so, again for unsupportable reasons.

### <u>Legal Standard and Precedent</u>

A prevailing party cannot be compensated for time spent litigating

unsuccessful claims to the extent such time is separable.  *See Hensley*, *supra*, 461

U.S. at 434; *see also Foster v. Board of School Comm'rs*, 810 F.2d 1021 (11th

---

[12]    This Court has recently stated, citing the Supreme Court, that:

> [A] district court must "consider the relationship between the extent of success and the amount of the fee award." *The court will reduce the award* if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 439–40, 103 S.Ct. 1933....

> We have recognized that, "[w]hen considering the extent of the relief obtained, we must compare the amount of damages sought to the amount awarded." *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005).

*McAfee*, 738 F.3d at 92-93 (emphasis added).

[13]    The same standard of review applies to both the first issue and second issue. *See Brief of Appellants*, at 6.

Cir.), *cert. denied*, 484 U.S. 829 (1987). And as this Court has made clear, this reduction is separate from, and in addition to the analysis/reduction for degree of overall success:

> … after calculating the lodestar figure, the "court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Johnson v. City of Aiken,* 278 F.3d 333, 337 (4th Cir. 2002). "*Once the court has subtracted* the fees incurred for unsuccessful, unrelated claims, it *then* awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

*Jackson, supra,* 391 F. App'x. at 241 (emphasis in original) (quoting *Grissom, supra,* 549 F.3d at 321.

This is phrased as a directive, not a guideline; and in *Duke v. Uniroyal Inc.*, 928 F.2d 1413 (4th Cir. 1991), the Court affirmed this practice. There, the fees were reduced, *inter alia*, because the claims of two of the four employees were dismissed on summary judgment (here, ten were). In the district court, as to the unsuccessful plaintiffs, "[t]he parties focused on whether the time incurred with respect to claims which were dismissed by summary judgment should cause a reduction…." *Id.* at 1426. The district court concluded that:

> [A]fter a review of the timesheets the court finds that a 25% reduction in Stage I [the period from the beginning of the litigation through its summary judgment phase] adequately estimates the time spent on non-prevailing plaintiffs and on the [ ] claims of the prevailing plaintiffs.

*Id.*

20

This Court approved of this analysis upon appeal, consistent with holdings in similar multi-plaintiff cases.[14]

More specifically as to FLSA cases, reducing fees related to unsuccessful plaintiffs is common. In *Ramirez v. Lewis Energy Group, L.P.*, No. 5:15-CV-34, 2016 WL 4004706, at *4 (S.D. Tex., July 29, 2016), four of the sixteen FLSA opt-in plaintiffs were dismissed *without prejudice* upon stipulation. In analyzing the fee petition, the court stated that:

> Defendants contend that time related to the four plaintiffs who were voluntarily dismissed is not recoverable. The Court agrees. Plaintiffs are not entitled to fees for work undertaken solely on unsuccessful plaintiffs. *See Norris v. Hartmarx Specialty Stores, Inc.*, 913 F.2d 253, 257 (5th Cir. 1990) (citing *Hensley*, 461 U.S. at 440, 103 S.Ct. 1933).

Accordingly, in *Ramirez*, the court deducted discrete billing entries related to the dismissed plaintiffs. *See Ramirez*, 2016 WL 4004706, at *4.

---

[14]     *See*, *e.g.*, *Adorno v. Port Authority of New York and New Jersey*, 685 F. Supp. 2d 507, 517 (S.D.N.Y. 2010) ("Plaintiffs' 'intertwining' argument may carry some force as to the intertwining of [two plaintiffs'] successful and unsuccessful claims, but it fails as to the claims of the five unsuccessful plaintiffs. Plaintiffs have not cited any authority for the proposition that in a multi-plaintiff case, where some plaintiffs succeed and some fail, counsel may be compensated for the time spent prosecuting the unsuccessful plaintiffs' claims."); and *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1174-75 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598 (2001) ("It is clear that the class attorneys should not have been compensated for time spent litigating the damage claims of individual plaintiff class members who have not and ultimately do not receive a backpay award. … In this case, the backpay *claims of unsuccessful class members in effect constituted separate claims for relief* once the case reached the damage phase of the litigation" (emphasis added).)

21

Similarly, in *Carlson v. Leprino Foods Co.*, No. 1:05-CV0798, 2009 WL 5697878 (W.D. Mich., Sept. 20, 2009), *Report and Recommendation Adopted in Part*, *Rejected in Part*, 2010 WL 299490 (W.D. Mich., Jan. 20, 2010)[15], the court reduced the FLSA fee petition related to unsuccessful plaintiffs. There, the attorneys' fees were reduced by approximately 38-percent because 84 plaintiffs opted-in to the collective action, but only 48 remained when the case settled. *See Carlson*, 2009 WL 5697878, at *8-9. Instead of deducting discrete billing entries related to the dismissed plaintiffs, the court simply imposed a reduction in the attorneys' hourly rates. *See id.* at *8.[16]

In *Toliver v. JBS Plainwell, Inc.*, Case No. 1:11-cv-302, 2015 WL 11255451 (W.D. Mich. Aug. 20, 2015), *Report and Recommendation Adopted as Modified*, *Toliver v. JBS Plainwell, Inc.*, 2016 WL 165031 (W.D. Mich., Jan., 14, 2016), the

---

[15]     The Report was rejected only to the extent that it should not have deducted $2,343.45 in miscellaneous expenses. *See Carlson*, 2010 WL 299490, at *4.

[16]     There, the court found that:

> [I]t is literally impossible to parse out what efforts by plaintiffs' counsel were expended on successful versus unsuccessful plaintiffs. Plaintiffs' proposed allocation for successful versus unsuccessful claims does not go far enough. However, because of the related nature of the claims, it appears impossible to further apportion time spent on each. Thus, the court recommends that reductions in plaintiffs' fee award be made with reference to a reduction in the hourly rate awarded to reach what the court recommends as a reasonable attorney fee.

*Carlson*, 2009 WL 5697878, at *8.

court adopted a different approach in reducing the attorneys' fees for unsuccessful plaintiffs in an FLSA action.[17] There, 200 plaintiffs opted in the FLSA action, with a total of 50 receiving some compensation by settlement or accepting offers of judgment. *See Toliver*, 2015 WL 11255451, at *2. As to the limited success, and whether the lodestar should be reduced to reflect plaintiffs' limited success, the court noted, *inter alia*, that eighteen of the opt-in plaintiffs were involuntarily dismissed due to claim preclusion from another case, and 104 were dismissed for failing to participate in discovery. *See id.*, at *9. On this issue, the court held that a 25-percent reduction in the lodestar was reasonable to reflect the plaintiffs' limited success. *Toliver*, 2015 WL 11255451, at *10.

## **Argument**

As shown, federal courts around the country consistently perform this required analysis and make reductions to attorney's fees as directed by *Hensley* unless unusual circumstances dictate otherwise. But here, the motions court failed to impose any reduction even though approximately 15-percent of the plaintiffs were involuntarily dismissed on summary judgment. The court gave the following rationale:

> Defendants argue that because ten out of 65 plaintiffs were eventually
> dismissed on summary judgment, the Court should reduce the attorney's fees

---

[17]     Finding that the Report appeared to have added an unwarranted *additional* 25% reduction to the attorney hour figures, the court modified the Report. Thus, overall fees were recalculated. *See Toliver*, 2016 WL 165031, at *11-12.

23

proportionally.  ECF No. 170 at 14-15 (citing *Grissom).*  Defendants point to *Chapman v. Ourisman Chevrolet Co.. Inc.,* Civil Action No. AW-08-2545, 2011 WL 2651867, at *17-18 (D. Md. July1, 2011), in which the court awarded a proportional amount of attorney's fees where only two of the fourteen plaintiffs were successful.  Defendants' arguments are unavailing. First, the *Grissom* case, on its face, applies to unsuccessful claims, and not to unsuccessful parties.  Second, even if the principle did apply to unsuccessful parties, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley v. Eckerhart,* 461 U.S. 424, 440 (1983). When claims involve a "common core of facts," "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Andrade* [*v. Aerotek, Inc.*] 852 F. Supp. 2d [637] 640 (D. Md. 2012) (citing *Brodziak v. Runyon,* 145 F.3d 194, 197 (4th Cir. 1998))….

(JA 336).

Again, this implicit holding that attorneys' fees can be awarded on the

discrete claims of unsuccessful plaintiffs is clearly erroneous.[18]  While *Grissom* on

its face applies to unsuccessful claims, *Chapman*, contrary to the court's

suggestion, "applied to unsuccessful claims, and not to unsuccessful parties."  (JA

336).  There, as here, plaintiffs alleged overtime compensation violations of the

---

[18]    As to the ten plaintiffs involuntarily dismissed, the motions court previously ruled that:  "PowerComm's motion for summary judgment on the issue of statute of limitations is granted with respect to Plaintiffs Alonzo Mudd, Raleigh Wall, Jacqueline Ridgley, Andre Adams, Michael Allen, Van Eubanks, Regina Freeman, William Holland, David Peterson, and Robert Wall and those Plaintiffs are dismissed." (JA 96).  Despite this ruling, Randolph's counsel submitted discrete billings for these involuntary-dismissed plaintiffs, which the motions court granted. *See, e.g.*, JA 155 (Nos. 78-80); 156 (Nos. 87, 94); 157 (No. 129); 158 (Nos. 140, 150, 153, 156); 159 (Nos. 177, 184, 187); 160 (Nos. 199, 213, 214); 162 (No. 280); 163 (Nos. 290, 307); 164 (No. 322); 180 (Nos. 674, 686); 181 (No. 700); 182 (No. 759); 183 (Nos. 767, 771); 184 (No. 804); 196 (Nos. 1084, 1087); 197 (1090, 1092); and 209 (No. 1444).

24

FLSA.  In ruling on attorneys' fees, the court (the same motions court as here) applied strict proportionality, stating that "given the success of two of fourteen plaintiffs, the Court awards the proportional amount of one-seventh of Plaintiffs' attorneys' fees…" *Chapman*, 2011 WL 2651867, at *18.  The court even noted that:

> [Two plaintiffs] withdrew from the case on July 29, 2010. Even though the record reflects that twelve plaintiffs existed at the time Defendants presented the offers of judgment on September 20, 2010, Plaintiffs' attorneys spent the majority of their hours working for all fourteen plaintiffs.

*Id.*, at *18, n. 10.  Thus, in *Chapman*, the court awarded the proportional amount of one-seventh, "instead of the requested one-sixth [by plaintiffs' counsel]. *Id.*, at *18.  Accordingly, contrary to the motions court's *dicta*, *Chapman* reduced the attorneys' fees related to the *unsuccessful parties.*

Despite *Chapman's* applicability to unsuccessful parties, the motions court stated that:

> … even if the principle did apply to unsuccessful parties, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley v. Eckerhart,* 461 U.S. 424, 440 (1983).  When claims involve a "common core of facts," "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Andrade,* 852 F. Supp. 2d at 640 (citing *Brodziak v. Runyon,* 145 F.3d 194, 197 (4th Cir. 1998)).

(JA 336).  The core principle of *Hensley* is that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is

25

reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440.  As to

*Andrade*, the motion court's reliance for its ruling here was clearly erroneous.

There, the court was examining the relationship between FLSA "off-the-clock"

claims and misclassification claims (two distinct FLSA claims), *see Andrade*, 852

F. Supp. 2d 637, 640-44, and thus is inapposite to the present circumstances, where

there was no issue of time classification.  Here, by contrast, multiple plaintiffs

asserted a single FLSA claim, with approximately 15-percent of them getting

involuntarily dismissed.  Despite the involuntary dismissal of ten plaintiffs,

Randolph's counsel made no deductions for the unsuccessful claims of the

unsuccessful parties, even though discrete billing entries of the unsuccessful parties

were submitted in the fee petition.  *See Brief of Appellants*, at 7, no. 18, *supra*.

In closing, it was a clear abuse of discretion for the motions court to award

full attorneys' fees even though 15-percent of the plaintiffs were not prevailing

parties.  As shown, there were numerous discrete billings as to these unsuccessful

plaintiffs, which under Fourth Circuit law should have been stricken.  There is no

reason the motions court's rationale would not similarly apply to a case with one

successful plaintiff and 99 unsuccessful plaintiffs asserting a single FLSA claim

and having full fees awarded.  But this rationale is contrary to the Supreme Court

in *Hensley*, *supra*, and this Court in *Uniroyal*, *supra*, *and Grissom*, *supra.*

Therefore, given the unsuccessful claims of a significant number of plaintiffs,

PowerComm requests that the Court correct the error below and reduce the fees in accordance with the supporting authority cited herein.

## CONCLUSION

For all the foregoing reasons, PowerComm respectfully requests that motions court award be reversed and that the attorneys' fees be reduced as is deemed appropriate.

## REQUEST FOR ORAL ARGUMENT

PowerComm respectfully requests oral argument if it may assist the Court in resolving the issues presented.

\_\_\_/s/ Geoffrey M. Bohn_____
Geoffrey M. Bohn, VSB# 42610
POWERCOMM CONSTRUCTION, INC., *et al.*


\_\_\_/s/ Geoffrey M. Bohn_____
Geoffrey M. Bohn
Robert A. Battey
BOHN & BATTEY, PLC
P.O. Box 101685
Arlington, VA 22210
Tel:          (703) 599-7076
Fax:          (703) 842-8089
Email:        gbohn@bohn-battey.com
Attorneys for appellants

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*6,939*] words.

[    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.      This brief document complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: May 8, 2017                                    /s/ Geoffrey M. Bohn

                                                                    *Counsel for Appellants*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 8th day of May, 2017, I caused this Brief of

Appellant and Joint Appendix to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

R. Scott Oswald
Nicholas Woodfield
EMPLOYMENT LAW GROUP, PC
888 17th Street, NW, Suite 900
Washington, DC  20006
(202) 261-2883

*Counsel for Appellees*

I further certify that on this 8th day of May, 2017, I caused the required

copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk

of the Court.

/s/ Geoffrey M. Bohn
*Counsel for Appellants*